The Honorable Carol Billings, City Attorney 200 E. 8th Avenue, Suite 203 Pine Bluff, AR 71601
Dear Ms. Billings:
You have requested an Attorney General opinion, pursuant to A.C.A. §25-19-105(c)(3)(B), concerning the release of certain records under the Freedom of Information Act (FOIA) (A.C.A. § 25-19-101 through — 107).
It is my understanding that a request has been presented to the City of Pine Bluff for certain records contained in an internal affairs investigative file. The complete investigative case file has been requested. You have provided me with a copy of that file. It contains the following records:
• The complaint
• Statements taken from all parties involved and other officers
• Summaries
• Conclusions
• Discipline recommended
• Supporting documentation
• A transcript of a taped conversation
The above-listed records are all related to a situation involving three police officers employed by the City of Pine Bluff, all of whom were suspended as a result of the internal investigation. The records either contain the names of these (and other) officers, or are directly related to the situation involving these three officers. All three officers have appealed their suspensions. You indicate that these records have been requested by the local press. You state that you are inclined not to release these records to the press.[1]
I am directed by law to issue an opinion as to whether your determination, as the custodian of the records, regarding the release of the requested records is consistent with the FOIA. A.C.A. §25-19-105(c)(3)(B). I also note that I am limited by law to issuing an opinion as to the correctness of your determination. I will therefore confine my opinion to this issue, but will attempt to address some of the other concerns you have raised.
It is my opinion, as explained more fully below, that your inclination not to release the majority of these records to the press at this time is correct. Some of the records, however, can be released. Finally, it may be appropriate to redact some information from certain records before releasing them.
I have consistently taken the position that the records that are contained in an internal investigation file constitute either the personnel records or the employee evaluation/job performance records of the individuals who were being investigated. See Op. Att'y Gen. No.2000-174. In addition, some of the records may also simply constitute "public records," within the FOIA's definition of that term. See A.C.A. §25-19-103(1). Because these types of records are subject to different standards of disclosure to the public, I will analyze the records individually.
The Original Complaint
It is my opinion that the original complaint[2] constitutes a "personnel record" of the person who was being investigated. It also constitutes the personnel record of the complainant and of any other employees mentioned in the complaint. This office has taken the general position that "personnel records" are all records other than employee evaluation and job performance records[3] that pertain to individual employees, former employees, or job applicants. See, e.g., Op. Att'y Gen. Nos. 2000-059; 99-244; 99-147, citing Watkins, The Arkansas Freedomof Information Act (m m Press, 3rd Ed., 1998) at 134. Moreover, this office has specifically found that unsolicited complaints about employees constitute those employees' personnel records. See Op. Att'y Gen. No.2000-058. It is my understanding that this complaint was unsolicited, and therefore constitutes a "personnel record."
Under the FOIA, "personnel records" must be released unless their release would constitute a "clearly unwarranted invasion of the personal privacy" of the subject of the records. A.C.A. § 25-19-105(b)(10). The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the court applies a balancing test. The court will weigh the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice,308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy."
The question of whether the release of any particular records would constitute a "clearly unwarranted invasion of personal privacy," under this balancing test, is a question of fact that must ultimately be made by the custodian, based upon all of the circumstances surrounding the situation. See Ops. Att'y Gen. Nos. 98-001; 94-119. Given the facts as you have related them to me, it is my opinion that the release of the original complaint about which you have inquired would not constitute a clearly unwarranted invasion of the personal privacy of the officer who was the subject of the complaint, or of the complainant or any other employees mentioned in the complaint. In my opinion, the public's interest in records relevant to the misconduct of a high ranking public official and of other public employees will generally outweigh those individuals' privacy interest in those records. It has been noted by a commentator on the Freedom of Information Act that "the `public interest' will ordinarily be great when there is a need for oversight to prevent wrongdoing or when the requested records would inform the public about agency misbehavior or other violations of the public trust." Watkins, TheFreedom of Information Act, 3rd ed., at 139. Accord, Op. Att'y Gen. No. 98-001.
I must note, however, that it may be appropriate to redact certain information from this record before it is released. The complainant and any other employees or individuals who are mentioned in this record may have a constitutionally protectable privacy interest in the record.[4]
The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information. See McCambridge v. City ofLittle Rock, 298 Ark. 219, 766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. The McCambridge court specifically recognized that family relationships can carry a constitutionally protectable privacy interest. Id. at 230, citing Paul v. Davis, 424 U.S. 693, 713 (1976).
If you, as custodian of the records, determine factually that any other individuals who are mentioned in the original complaint have interests that meet the three prongs of test laid out by the McCambridge court, you must then consider whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs those individuals' privacy interest in their non-disclosure. Again, this determination will be a factual one, based upon the information concerning the situation that is uniquely available to you as custodian. If you determine that these individuals' privacy interest outweighs the public's interest in knowing their identity, you should redact their names and personal identifiers from the record before you release it.
To summarize, it is my opinion that the original complaint constitutes the personnel record of the employee who was the subject of the complaint, and of the complainant and other employees mentioned in the complaint, and that given the facts as you have presented them to me, the public's interest in this record outweighs these individuals' privacy interest in this record. However, it may be appropriate, based upon the facts available to you as custodian, to redact the names of other individuals who are mentioned in the complaint.
Statements, Summaries, Conclusions, Recommendations, Transcript
It is my opinion that with one exception, the statements of other parties who were interviewed as a part of the investigation, the summaries, the conclusions, the discipline recommended, and the transcript of the taped conversation should not be released to the public.
The one record in this group of records that should be released is the Receipt of Notice of Disciplinary Action signed by the employee who was the subject of the complaint, dated July 10, 2000. Because this record does not detail the incidents that gave rise to the suspension, it constitutes a personnel record rather than an employee evaluation/job performance record. See Op. Att'y Gen. No. 97-400. As discussed above, it is my opinion that the release of this record would not constitute a clearly unwarranted invasion of the subject's personal privacy.
All of the other records in this group of records constitute the employee evaluation/job performance records of the individual who was the subject of the investigation. I have previously taken the position that records that were generated as part of an investigation of allegations of the misconduct of an employee, and that detail incidents that gave rise to an allegation of misconduct, should be deemed the "employee evaluation/job performance records" of that employee. See Ops. Att'y Gen. Nos. 2000-130; 1999-361; 1999-359.
"Employee evaluation/job performance records" are exempt from disclosure to the public unless the following three conditions have been met: (1) There has been a final administrative resolution of any suspension or termination proceeding; (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and (3) There is a compelling public interest in the disclosure of the records in question. A.C.A. § 25-19-105(c)(1). Although the employee who is the subject of the interview records was suspended, his appeal of this suspension is still pending. Therefore, there has not been "a final administrative resolution" of his suspension, and the three conditions that must be met for release of these records have not been met. These records must therefore not be released.
I note that you have inquired as to whether there would be a "compelling public interest" in the records that have been requested (after the subject's appeal process has been completed). Because this appeal process is still pending, I am unable to respond to this question at this time. The question could be mooted entirely by a reversal of the suspension. In addition, the question could be substantially impacted by findings made in the appeal proceedings. For these reasons, it is premature to address this question. Nevertheless, I note that Professor Watkins, cited previously, has provided some guidelines for determining whether a "compelling public interest" exists. He states: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ." Watkins, Id. at 146. Professor Watkins also points out: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." Watkins, Id. at 145-46. In this regard, Professor Watkins also states: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Watkins, Id. at 147. Professor Watkins has also noted that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Watkins, Id. at 146-47 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")
Finally, I note that some of the records that have been requested also constitute the personnel records or the employee evaluation/job performance records of the two other officers who were suspended as a result of this investigation. More specifically, I would classify the following records as the personnel records of the complainant and of the third officer:
• Third officer's Receipt of Notice of Disciplinary Action dated 7-11-2000
• Complainant's Receipt of Notice of Disciplinary Action dated 7-13-2000
Because these records do not detail the incidents that gave rise to these officers' suspensions, they constitute personnel records rather than employee evaluation/job performance records. See Op. Att'y Gen. No.97-400. It is my opinion that the release of these records would not constitute a clearly unwarranted invasion of these officers' personal privacy.
I would classify the following records as employee evaluation/job performance records of both the complainant and the third officer:
• Memorandum from third officer to Chief Nathaniel Clark dated 6-8-2000
• Memorandum from third officer to Chief Nathaniel Clark dated 6-11-2000
• Memorandum from Chief Clark to Asst. Chief Scarlett dated 6-21-2000
• Memorandum from Chief Clark to Asst. Chief Scarlett dated 7-10-2000
• Memorandum from Chief Clark to Sgt. Jeff Hubanks dated 6-9-2000
• Letter to complainant from Chief Clark dated 6-12-2000
• Memorandum to third officer from Chief Clark dated 6-19-2000
• Memorandum from Chief Clark to Lt. Hopson dated 6-9-2000
• Memorandum from Asst. Chief Scarlett re: response to promotional grading system dated 5-22-2000
I would classify the following record as the employee evaluation/job performance record of the third officer, but not of the complainant:
• Notice of suspension memorandum to third officer dated 7-11-2000
I would classify all of the remaining records under this heading of "Statements, Summaries, Conclusions, Recommendations, Transcript" as the employee evaluation/job performance records of the complainant, but not of the third officer.
Again, because these officers have appealed their suspensions, none of the above-listed records can be released at this time, even if the appeal process of the officer who was the subject of the investigation is completed. At such time as these officers' appeals have been completed, the appropriateness of the release of these records must be evaluated in light of the results of those appeals.
Supporting Documentation
The "supporting documentation" consists of certain medical records, certain work schedule records, certain records related to the department's promotion policy, and a police incident report.
The medical records may not be released. A.C.A. § 25-19-105(b)(2).
The work schedule records should be released. They constitute "public records," within the meaning of the FOIA's definition of that term, see
A.C.A. § 25-19-103(1), and do not fall within any exemption from disclosure.
It is my opinion that, with one exception, the records relating to the department's promotion policy constitute the employee evaluation/job performance records of the individuals who are mentioned therein. Although general policy records are generally not exempt from disclosure, these records detail a lack of performance of those individuals and in some instances, recommend discipline, and therefore constitute employee evaluation/job performance records. Unless the three prongs of the test for the release of employee evaluation/job performance records, as set forth in A.C.A. § 25-19-105(c)(1), discussed above, have been met, these records must not be released. The one record relating to the department's promotion policy that may be released is the memorandum dated May 9, 2000, to "All Sworn Personnel" from Chief Nathaniel Clark. This record is a "public record" and does not fall within any exemption from disclosure.
Finally, the police incident report that is included in the file should be released. This record constitutes a "public record" and is not subject to any exemption from disclosure. However, I will note that this record contains one individual's social security number. This office has consistently opined, relying on the Federal Privacy Act, that social security numbers should not be released. See, e.g., Ops. Att'y Gen. Nos.2000-130; 95-262; 93-114. Therefore, the social security number that is contained in the incident report should be redacted.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] I note that these records have also been requested by one of the officers who was under investigation. I have opined that these records can be released to this officer, pursuant to A.C.A. § 25-19-105(c)(2).See Ops. Att'y Gen. Nos. 2000-201 and 2000-202.
[2] In referring to the "Original Complaint," I am referring to the document entitled "Departmental Correspondence", coupled with the set of supporting hand-written notes. I am assuming that both of these documents were created by the complainant and were unsolicited by the Department. If either of these documents was solicited by the Department, it must be treated as an employee evaluation/job performance record, rather than a personnel record, and must not be released.
[3] This office has taken the position that an unsolicited complaint about an employee by another employee does not constitute an "employee evaluation/job performance record" and therefore is not entitled to the exemption that is sometimes available for such records. See A.C.A. §25-19-105(c)(1); Ops. Att'y Gen. Nos. 2000-166; 99-026; 96-033. It is my understanding that the complaint letter that has been requested was unsolicited. I note that even if it had been solicited, and could otherwise be deemed an "employee evaluation/job performance record," it must nevertheless be made available to the subject of the record. A.C.A. § 25-19-105(c)(2).
[4] It is my opinion that the complainant and other individuals mentioned in the complaint may have a more protectable privacy interest in this record than does the employee who was the subject of the complaint, by virtue of the fact either of their lower rank, or of their lack of direct involvement in the situation, and their resulting positions of lesser power in the situation.